UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLHA VOLKIVSKA, A-240-393-186,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br>Respondent. | No. 1:26-cv-2922 DAD AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, an immigration detainee proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons discussed below, the undersigned recommends petitioner's petition be granted, petitioner be immediately released, and respondent be enjoined from unlawfully re-arresting or re-detaining petitioner.

I. Factual and Procedural History[1]

Petitioner is a native and citizen of Ukraine who entered the United States lawfully on a visa, which expired in 2009. ECF No. 1 at 4-5; ECF No. 6. Petitioner states that she initially entered on a visa in 2004 and was then issued a 5-year visa in 2008, misunderstood its terms, and mistakenly overstayed the visa. ECF No. 1 at 5-6. Petitioner is married to a United States citizen

[1] All undisputed facts contained in the petition are deemed admitted and will be relied upon, unless the record reflects contrary facts. Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.").

and has a child, who is also a United States citizen. ECF No. 1 at 5. On October 3, 2025, petitioner was detained by Immigrations and Customs Enforcement ("ICE"). Id. at 5.

On November 9, 2026, an immigration judge ordered removal, and an appeal is due by December 9, 2026. Petitioner is detained at the California City Immigration Processing Center.[2]

On April 17, 2026, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging her detention. ECF No. 1. The petition asserts that petitioner's prolonged detention without a bond hearing violates her procedural due process rights under the Fifth Amendment Due Process Clause. Id. at 6-17. By way of relief, petitioner requests that the court declare that her detention violated the Due Process Clause, order her release or, in the alternative, a bond hearing at which the government bears the burden of establishing by clear and convincing evidence that petitioner presents a risk of flight or a danger to the community and that no alternatives to detention could mitigate that risk, and grant such further relief that the court deems just and proper. Id. at 17.

Respondent filed a response stating that petitioner overstayed her visa in 2009 and is detained in accordance with 8 U.S.C. § 1226(a). ECF No. 6. Respondent states that petitioner was encountered by ICE "after being arrested by a local sheriff's office on multiple charges." Id. Respondent did not submit any documents, such as an FBI RAP sheet or any other records to corroborate this statement. Id. Respondent maintains that petitioner is eligible for a bond hearing if she requests one. Id.

Petitioner did not file a reply. The case is deemed submitted.

## II. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of

---

[2] The court takes judicial notice of the information provided on the Executive Office for Immigration Review's ("EOIR") Automated Case Information webpage, available at https://acis.eoir.justice.gov/en/ (last visited Nov. 10, 2026), and the information provided on the Immigration and Customs Enforcement Online Detainee locator, available at https://locator.ice.gov/odls/#/search (last visited Nov. 10, 2026). See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

"District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

## III. Discussion

The Fifth Amendment Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted). These due process rights extend to immigration proceedings, including detention and deportation proceedings. Id. at 693-94; see also Demore v. Kim, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first is to determine whether there exists a protected liberty interest under the Due Process Clause, and the second is to examine the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

### i. Liberty Interest

As for the first step, the undersigned finds that petitioner has a protectable liberty interest in her freedom. "Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Yovani M.D. v. Warden of the Central Valley Annex Detention Facility, No. 1:26-cv-05648 TLN AC, 2026 WL 2168402, at *3 (E.D. Cal. July 27, 2026) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)).

Several courts in this circuit have found that noncitizens who were authorized to enter the United States and remained within the United States beyond their authorized stay have a protected liberty interest where, as here, ICE did not take action to promptly detain them upon expiration of their status. See, e.g., Kalkan v. Chestnut, No. 1:26-cv-2028 DAD EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), appeal dismissed, No. 26-3277, 2026 WL 2446315 (9th Cir. 2026) (finding a protected liberty interest where the noncitizen had entered the United States on a nonimmigrant visa, lived within the United States for approximately three years, and applied for asylum "such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status"); Oliveira Tinoco v. Albarran, No. 1:26-cv-5505 DC CKD, 2026 WL 2949219, at *5 (E.D. Cal. Oct. 1, 2026) (same for noncitizen who entered on a B-2 visa, which had expired, and applied for and was denied adjustment of status, lived in the United States for seven years, and was permitted to travel internationally on several occasions) (collecting cases); Carrasquel v. Warden, Cal. City Immigration Processing Ctr., No. 1:26-cv-6867 DAD JDP, 2026 WL 2621102, at *2 (E.D. Cal. Sept. 4, 2026) (same for noncitizen who entered on an N-1 visa and applied for and was granted temporary protected status, both of which had expired, and lived in the United States for twelve years); Granillo Arballo v. Andrews, No. 1:26-cv-5425 DC CSK, 2026 WL 3168793, at *1 (E.D. Cal. Oct. 22, 2026) ("[T]his court has held that

noncitizens admitted to the United States pursuant to a visa, but not detained within a reasonable time after the expiration of their lawful status, develop a vested liberty interest in remaining free from detention such that due process forbids the government from detaining the noncitizen unless they are first provided with adequate notice and a pre-deprivation hearing before a neutral arbiter at which bond must be considered"); Kharitonova v. Albarran, No. 3:26-cv-1362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release [the petitioner], it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); Tello Vazquez v. Mullin, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

The undersigned finds the reasoning in the above-cited cases persuasive and applicable to this case. Here, petitioner entered the United States on a visa, and petitioner represents (and respondent does not dispute) that she traveled between the United States and Ukraine since 2004 on a visa without issue. ECF No. 1 at 5; ECF No. 6. It is undisputed that petitioner's visa expired in 2009, yet ICE did not detain her until October 2025, more than fifteen years later. ECF No. 1 at 5-6; ECF No. 6. As in the above-cited cases, immigration officials initially approved of petitioner's presence, and when her visa status expired, did not promptly detain her based on the expiration of status. Accordingly, petitioner has a protected liberty interest in her continued freedom.

i. Procedures Required

Having determined that a liberty interest exists, the court must examine what process is due. See Kentucky Dep't of Corrs., 490 U.S. at 460 (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient"). To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

With respect to the first Mathews factor, petitioner has a strong private interest in remaining free from detention. See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner lawfully entered the United States on a visa approximately eighteen years ago. ECF No. 1 at 5-6; ECF No. 6. During that time, she developed community and family ties. She has been married to a United States citizen for fourteen years and is raising her United States citizen daughter. ECF No. 1 at 5-6. This factor weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Where, as here, the government has known about a noncitizen's presence and expiration of lawful status but did not take timely action to detain them, the risk of erroneous deprivation is high where the noncitizen did not receive pre-deprivation notice and a hearing at which the government bears the burden to demonstrate a valid basis for detention. See Oliveira Tinoco, 2026 WL 2949219, at *5-6; Kharitonova, 2026 WL 531441, at *3; Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr., No. 5:26-cv-4555 KES, 2026 WL 2497334, at *4 (C.D. Cal. Aug. 25, 2026) (citing Perez Bueno v. Janecka, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026)). Here, the record does not indicate that petitioner received pre-deprivation notice or a hearing before an immigration judge before her current detention. Considering that petitioner has been detained for over a year without being provided with a bond hearing, the undersigned finds that the risk of erroneous deprivation is very high and concerning. See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The

risk of an erroneous deprivation of [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).

While respondent states in vague terms that petitioner was detained after being arrested "on multiple charges," respondent has provided no information regarding these charges nor produced any evidence to substantiate this assertion. See ECF No. 6. Respondent also does not argue that petitioner is a flight risk or danger to public safety, and, importantly, no neutral arbiter has made such a determination. Respondent also has not identified any reason why a pre-deprivation hearing could not have been held and has provided no evidence of exigent circumstances or urgent concerns that would warrant detaining petitioner without a hearing. It is not this court's role to determine whether petitioner is a danger or flight risk, and, while a neutral decisionmaker *could* make such a determination at a properly noticed hearing, the failure to provide such a hearing in over a year of custody presents a serious risk that petitioner has been erroneously deprived of her liberty interest. See Ortega v. Noem, No. 1:25-cv-01663-DJC-CKD, 2025 WL 3511914, at *2 (E.D. Cal. Dec. 8, 2025) (noting that, while certain facts could support changed circumstances "that would warrant detention, . . . due process requires that assertion be tested at a hearing that meets constitutional requirements"). Moreover, without any procedural safeguards to determine whether her detention was justifiable, the probative value of additional procedural safeguards is high.

Finally, while the government has an interest in enforcing its immigration laws, the government's interest in detaining petitioner without a hearing is low, and the effort and cost required to provide petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884 TLN SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Detention hearings are routine procedures in immigration proceedings that impose minimal cost and effort to the government. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

For these reasons, the undersigned finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. Respondent was required to provide petitioner with a pre-deprivation hearing *prior* to detaining her, and the failure to do so violated her due process rights from the outset of detention. See Carrasquel, 2026 WL 2621102, at *1-2; Oliveira Tinoco, 2026 WL 2949219, at *5-6; Kharitonova, 2026 WL 531441, at *3.

The remedy for the constitutional violation in this case is petitioner's immediate release from immigration detention. Zurita Navarro v. Warden, No. 1:26-cv-05661 DAD SCR, 2026 WL 2294963 (E.D. Cal. Aug. 9, 2026) (ordering release for a noncitizen who was encountered by immigration authorities following his arrest by local law enforcement and was not provided pre-deprivation 1226(a) procedures); Mendoza v. Adelanto ICE Processing Center Warden, No. 5:26-cv-02144, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("[A]llowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless. The government could always wait until a habeas petition is filed and then offer to hold a hearing."); Martinez Lopez v. Dep't of Homeland Sec. et al., No. 25-cv-03607, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (citation modified).

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED, as follows:
    a. Respondent shall IMMEDIATELY RELEASE petitioner OLHA VOLKIVSKA, A-240-393-186. At the time of release, respondent must return all of petitioner's documents and possessions.
    b. Respondent shall not impose any additional restrictions on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.
    c. Respondent is ENJOINED AND RESTRAINED from re-detaining petitioner

unless they provide at least 7 days' written notice to petitioner and hold a pre-deprivation bond hearing before a neutral decision maker, at which hearing respondent will bear the burden of demonstrating that petitioner is a flight risk or danger to the community and petitioner's eligibility for bond must be considered.

2. The order does not address the circumstances in which respondent may detain petition in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

3. Within three days of an order adopting these findings and recommendations, respondent be required to file a notice of compliance confirming petitioner's release.

4. The Clerk of the Court is directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 10, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE